IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LINDA ALLEN,

    **Plaintiff,**

vs.                                                      No. CIV-01-865 JP/RLP

**NORMA ESSARY, in her official
capacity as City of Albuquerque
Risk Manager, and CITY OF ALBUQUERQUE,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER

On August 22, 2002, the Defendants filed a Motion for Summary Judgment (Doc. No. 34). Having reviewed the parties' arguments and the evidence, this Court will grant in part and deny in part Defendants' Motion for Summary Judgment.

I.    **Background**

The following facts are those in the record which are most favorable to the Plaintiff. See EEOC v. Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1189 (2000). Plaintiff Linda Allen, an African-American woman, has been employed by the City of Albuquerque ("City") since 1987. She has worked as an Accountant II, her current position, since 1999. In this position, Ms. Allen supervised two Finance Technicians, Rene Swingle, from 1997 until 2002, and Daniel Eastwood, from 2000 until 2002.

Plaintiff asserts that Mr. Eastwood engaged in inappropriate conduct with other female co-workers. On one occasion, Mr. Eastwood stared at two female employees, making them uncomfortable. Mr. Eastwood also repeatedly invaded the personal space of other co-workers,

one of whom was Rene Swingle.  Ms. Swingle complained to Ms. Allen that Mr. Eastwood would come into her office and stand close to her, which made her feel uncomfortable.

Moreover, Plaintiff personally had problems with Mr. Eastwood. Throughout their business relationship, Plaintiff and Mr. Eastwood had difficulties working together, and Plaintiff often criticized Mr. Eastwood's job performance.  In January 2001, while Plaintiff was instructing Mr. Eastwood, he stared at her breasts and leaned toward her, bringing his face close to her breasts.  Plaintiff immediately complained to her supervisor, John Ewing, about this incident. Subsequently, Plaintiff and Mr. Ewing discussed the matter with Norma Essary, the City's Risk Manager in charge of the Risk Management Division.  Then, in February 2001, another incident occurred in which Mr. Eastwood, in response to Plaintiff's criticism, yelled at her and backed her up against a wall in the office.  That same month, Plaintiff and Mr. Ewing attended a meeting with Defendant Essary and Anna Lamberson, the Director of the Department of Finance and Administrative Services for the City, in which Plaintiff again complained about Mr. Eastwood's sexually harassing behavior.  In response to Plaintiff's complaints of sexual harassment by Mr. Eastwood, Ms. Lamberson commissioned an investigation by Robert Caswell Investigators.

In March 2001, the investigators interviewed approximately twenty-two individuals. Many of the persons interviewed stated that Plaintiff was aggressively loud, harsh, demeaning, unprofessional, and abusive to Mr. Eastwood.  No one interviewed, except Plaintiff, claimed to have witnessed violent behavior by Mr. Eastwood.  Upon reviewing the results of the investigation, Defendant Essary concluded that Plaintiff was the problem, not Mr. Eastwood. Defendant Essary responded by issuing a letter of reprimand to Mr. Ewing for not managing Plaintiff better.  Defendant Essary then moved Plaintiff's office across the hall from the Risk

Finance area to the area where the Risk Management claims adjusters worked.  This office was considerably smaller than Plaintiff's previous office, had no window, and was formerly used as a storage closet.  Defendant Essary denied, without explanation, Plaintiff's request to relocate to a vacant office in the Loss Prevention Section of Risk Management that was larger and more suitable than the office to which Plaintiff was moved.  In addition, Defendant Essary removed Mr. Eastwood and Ms. Swingle from Plaintiff's supervision.  Plaintiff was also relieved of her duty of distributing payroll checks, had her work hours changed from 7:00 a.m. to 4:00 p.m. to 8:00 a.m. to 5:00 p.m., was asked to provide medical records relating to her reported health problems, and had one of her accidental work injury claims investigated.[1]

After filing charges with the EEOC, Plaintiff sued Norma Essary and the City of Albuquerque for various claims arising during Plaintiff's employment with the City.  Plaintiff alleges in her Second Amended Complaint that she was discriminated against in the terms and conditions of her employment on the basis of her race and gender.  Plaintiff asserts that she was subjected to a hostile work environment when her male subordinate, Mr. Eastwood, on one occasion, allegedly stared at her breasts.  Additionally, Plaintiff alleges that she was retaliated against for her complaints about workplace violence and a hostile work environment.  Defendants' alleged retaliatory acts included moving Plaintiff to a smaller office in a less desirable location, changing her work hours, requiring that she receive counseling, subjecting her to heightened scrutiny, and terminating her responsibility for supervising subordinate employees.

---

[1] From the record, it appears that Plaintiff never turned over her medical records to the Defendants, and the Defendants did not pursue their request.  It also does not appear that any actions were taken against Plaintiff as a result of the investigation into her accidental work injury claim.

Moreover, Plaintiff claims she was further retaliated against when Defendant Essary allegedly ordered Carol Brewer-Marsden, the Employee Assistance Program Coordinator for the City, to stop providing counseling services to Plaintiff because Plaintiff had filed suit against the City.

II.     **The Summary Judgment Standard**

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When applying this standard, the Court examines the record evidence and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings. Id. To withstand a motion for summary judgment, the non-movant must make specific reference to evidence in the record. Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1546 (10th Cir. 1995); D.N.M. LR-Civ. 56.1(b) (placing similar burden on both parties). Unsubstantiated allegations, no matter how true they might be, cannot be considered. Gross, 53 F.3d at 1546.

III.    **Discussion**

   A.   **Title VII hostile work environment**

For Plaintiff's hostile work environment claim to survive summary judgment, the Plaintiff must show "that a rational jury could find that the workplace is permeated with discriminatory

4

intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Penry v. Federal Home Loan Bank of Topeka, 155 F.3d 1257, 1261 (10th Cir. 1998) (internal quotation marks omitted). However, "not all workplace conduct that may be described as 'harassment' affects a 'term, condition or privilege' of employment within the meaning of Title VII." Meritor Savings Bank v. Vinson, 477 U.S. 57, 67 (1986). For sexual harassment to violate Title VII, it must be "extreme" in order to amount to an alteration in the terms and conditions of employment. Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). Plaintiff's allegedly discriminatory incidents should not be examined in isolation; rather, the court should examine the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or merely offensive; and whether it unreasonably interferes with Plaintiff's work. Id. at 787-88; O'Shea v. Yellow Technology Servs., 185 F.3d 1093, 1097-98 (10th Cir. 1999). Plaintiff must show that the discriminatory conduct is severe and pervasive enough to be both subjectively and objectively hostile. Harris v. Forklift Systems, Inc., 510 U.S. 17, 21-22 (1993); O'Shea, 185 F.3d at 1097. Moreover, Plaintiff must demonstrate that she was harassed because of her gender. Penry, 155 F.3d at 1261.

    In her response, Plaintiff asserts, without elaboration, that Mr. Eastwood's conduct was sufficiently severe and pervasive to constitute a hostile work environment, leaving the Court to match Plaintiff's factual allegations with her particular claims. See Pl's. Resp. at 21. Plaintiff's primary allegation in support of her hostile work environment claim is that, while the Plaintiff was instructing her male subordinate, Mr. Eastwood, he stared at Plaintiff's breasts and leaned toward her, bringing his face close to her breasts. Pl.'s Resp. ¶ 32. Plaintiff alleges that Mr. Eastwood

stared at her breasts only this one time, and Plaintiff herself acknowledges that she scolded Mr. Eastwood for looking at her breasts, telling him that if he ever did that to her again, she would "beat the fucking shit out of him."  Defs.' Memo. in Supp. of Mot. for Summary Judgment, Ex. C at 11.

Plaintiff has also made other assertions that might be linked to her hostile work environment claim.  Plaintiff contends that in February 2001, when Plaintiff was criticizing Mr. Eastwood, he backed her up against the wall.  Pl.'s Resp. ¶ 38.  However, there is no evidence in the record to show that during this incident Mr. Eastwood tried to hit, or even touch, Plaintiff.

In addition, Plaintiff alleges that when Mr. Eastwood worked in the City's Treasury Department, he once touched a female co-worker on the shoulders and often behaved in a "feminine" manner.  Pl.'s Resp. ¶¶ 17-18.  Mr. Eastwood's alleged conduct in the Treasury Department, however, is irrelevant to Plaintiff's claim of a hostile work environment in the Finance Department.

Furthermore, Plaintiff asserts that Mr. Eastwood repeatedly invaded the personal space of his co-workers, Kathy Garcia and Rene Swingle.  See Pl.'s Resp. ¶¶ 19, 26-31.  Although Ms. Garcia stated in her deposition that Mr. Eastwood liked to invade people's space when he talked to them, she admitted that there was no sexual overtone or undercurrent when Mr. Eastwood invaded her personal space.  Exhibits to Plaintiff's Memo. Brief in Opposition to Mot. for Summary Judgment, Ex. 3 at 24-25.  Likewise, Ms. Swingle testified that she was uncomfortable when Mr. Eastwood invaded her space, but that Mr. Eastwood was "harmless" and she never felt that he was being sexually threatening or sexually harassing.  Exhibits to Plaintiff's Memo. Br. in Opposition to Mot. for Summary Judgment, Ex. 4 at 22.  Ms. Swingle also testified that, in

6

response to her concerns about Mr. Eastwood invading her personal space, Plaintiff personally took Ms. Swingle down to Jack Ning, the EEOC Coordinator for the City, in order to fix the situation. A meeting then took place during which Ms. Swingle told Mr. Eastwood that she was uncomfortable with him in her space, and "from that day forward, [Mr. Eastwood] pretty much [kept] his space." Id., Ex. 4 at 22-23.

As further support for her hostile work environment claim, Plaintiff alleges that Mr. Eastwood stared at two women, Stephanie Apodaca and Consuelo Padilla, in a way that made them uncomfortable. Pl.'s Resp. ¶ 24. Ms. Apodaca testified, however, that, while the staring incident made her uncomfortable, she did not feel like it was sexual harassment. Defs.' Reply, Ex. F at 5.

Having reviewed, in a light most favorable to Plaintiff, all of the conduct that Plaintiff describes as creating a hostile work environment, this Court holds that no rational jury could conclude that the work environment was permeated with severe or pervasive sexual discrimination. Plaintiff was allegedly subjected to only one overtly sexual, but isolated, incident.[2] That incident – Mr. Eastwood staring at Plaintiff's chest – is similar to one of many incidents in Penry. 155 F.3d at 1263. Yet, in Penry, the plaintiff's supervisor leaned against her and repeatedly tried to look down the plaintiff's blouse, and this conduct was accompanied by a long list of other gender-based comments and conduct. See id. at 1260-61. The Tenth Circuit ruled in Penry that the chest-staring, combined with the additional gender-based conduct, did not

---

[2] The record indicates that the incident in which Mr. Eastwood backed Plaintiff against the wall was based more on anger rather than anything sexual. Similarly, the evidence shows that the incidents in which Mr. Eastwood invaded two female co-workers' personal space and stared at two other female co-workers were not sexual in nature.

constitute a hostile work environment. Id. at 1263. Similarly, courts in other cases have deemed much more prurient behavior to be insufficient to sustain a claim of sexual harassment. See e.g., Sprague v. Thorn Americas, Inc., 129 F.3d 1355, 1366 (10th Cir. 1997) (concluding that the plaintiff had failed to prove a hostile work environment, despite evidence of five incidents of sexual comments over sixteen months, one of which involved the defendant looking down the plaintiff's dress); Adusumilli v. City of Chicago, 164 F.3d 353, 361-62 (7th Cir. 1998) (holding that allegations in which co-workers teased the plaintiff; made sexual jokes aimed at her; commented about her low-neck tops; briefly touched her arm, fingers, or buttocks on four occasions; and repeatedly stared at her breasts, were not sufficiently severe to constitute sexual harassment); Arasteh v. MBNA America Bank, N.A., 146 F.Supp.2d 476, 495-96 (D. Del. 2001) (finding that comments regarding plaintiff's relationship with her husband, insistence that plaintiff socialize more, rubbing of plaintiff's legs, and staring at plaintiff's chest an unspecified number of times were not sufficiently severe or pervasive to constitute sexual harassment under Title VII). The facts concerning Plaintiff are much less severe and pervasive than those found in Penry, Sprague, Adusumilli, and Arasteh. Accordingly, granting Plaintiff the benefit of every inference, the Court concludes, as a matter of law, that Plaintiff cannot demonstrate that the Defendants created a hostile work environment in violation of Title VII.

B. **Title VII race discrimination**

To prevail on a claim of disparate treatment under Title VII, the plaintiff must prove by a preponderance of the evidence that the defendant had a discriminatory motive or intent. See Sorensen v. City of Aurora, 984 F.2d 349, 351 (10th Cir. 1993). In analyzing Title VII discrimination claims, courts apply the burden-shifting approach set forth in McDonnell Douglas

8

Corp. v. Green, 411 U.S. 792, 802-04 (1973). Plaintiff must first establish a prima facie case of discrimination. Id. In order to make a prima facie case of racial discrimination, the Plaintiff must show (1) that she is a member of a racial minority, (2) that she suffered an adverse employment action, and (3) that similarly situated employees were treated differently. Trujillo v. University of Colorado Health Sciences Center, 157 F.3d 1211, 1215 (10th Cir. 1998). If Plaintiff establishes a prima facie case, then the burden shifts to the employer to demonstrate a legitimate nondiscriminatory reason for its action. If the employer offers a legitimate non-discriminatory reason, the burden shifts back to the Plaintiff to show that the employer's reason is mere pretext and unworthy of belief. McDonnell Douglas, 411 U.S. at 802-04; Trujillo, 157 F.3d at 1215.

    1.    Prima Facie Case

Plaintiff is unable to establish a prima facie case of race discrimination because she has not shown sufficient direct evidence of racial discrimination and has not demonstrated that similarly situated non-black employees were treated differently. In her Second Amended Complaint, Plaintiff claims the Defendants discriminated against her on the basis of her race in how they responded to her complaints concerning the conduct of Mr. Eastwood. However, in her complaint, Plaintiff does not point to any evidence of racial discrimination, and she does not state that any similarly situated employees were treated differently.

In her response to Defendants motion for summary judgment, Plaintiff for the first time mentions an instance of alleged racial discrimination. Plaintiff offers evidence that another black employee, who worked in a different division and different department, complained that several Oreo cookies had been taped to her desk, chair, and computer. See Pl.'s Resp. ¶ 70. Plaintiff criticizes Norma Essary, the Risk Manager in Plaintiff's department, for not investigating the

incident.  Id.  However, Ms. Essary's failure to conduct an investigation into this incident, which occurred in a different division in a different department, is insufficient evidence to make an inference of race discrimination in Plaintiff's case.

Race discrimination can also be established by showing that similarly situated employees were treated differently.  The burden, however, is on the plaintiff to demonstrate that other employees, who were treated differently, were similarly situated.  See Sorensen v. City of Aurora, 984 F.2d 349, 353 (10th Cir. 1993); Robinette v. National Credit Services Corp., 182 F.Supp.2d 1055, 1061 (D. Kan. 2001).  Plaintiff here is unable to meet that burden.

Plaintiff points to only four instances in the record where non-black employees were allegedly treated differently.  First, in Carol Brewer-Marsden's deposition, Ms. Marsden alleges that a manager in her section, Julia Bain, was supported by the prior risk manager, despite the fact that a federal audit showed numerous violations in Ms. Bain's section.  Exhibits to Plaintiff's Memo. Brief in Opposition to Mot. for Summary Judgment, Ex. 2 at 20-21.  Ms. Marsden admits, however, that it was the prior risk manager, not Ms. Essary, who supported Ms. Bain.  Id.  The second employee is a white male supervisor who worked in transit and who, according to Ms. Marsden, threatened people with a knife at work, served prison time, and was later reinstated with the City and promoted.  Id. at 33.  The third employee is a white male superintendent who brought a hunting rifle into work and was given a thirty-day suspension.  Id. at 36.  The only other allegedly similarly situated employee mentioned in the record is Cindy Jaramillo, who Plaintiff, in her answers to interrogatories, asserted was promoted despite Ms. Jaramillo having

had several EEOC complaints made against her for harassing and intimidating behavior towards her clerical staff. Defs.' Memo. in Supp. of Mot. for Summary Judgment, Ex. C at 40.[3]

Plaintiff has not demonstrated that any of the four employees are similarly situated to the Plaintiff. These employees would be similarly situated if they all worked in similar positions, all complained that a subordinate or other employee had sexually harassed them or had been aggressive with them, all had similar job performances, all had the same supervisor, and all were equally stern with their subordinates. Cf. Cone v. Longmont United Hospital Association, 14 F.3d 526, 532-33 (10th Cir. 1994) (holding that plaintiff did not demonstrate that other employees were similarly situated because she did not show that the employees worked in similar positions, were all told that their positions would be held open, were all eager to return to work, all had similar job performances, and all had substantially similar jobs available to them). Plaintiff has not shown that any of the employees share these factors. Moreover, Plaintiff's situation is not comparable to these employees, because it is undisputed that Defendant Essary received complaints from Plaintiff's subordinates concerning her interpersonal skills, and Plaintiff has not demonstrated that these allegedly similarly situated employees had the same kinds of complaints made against them. Cf. Robinette v. National Credit Services Corp., 182 F.Supp.2d 1055, 1061 (D. Kan. 2001) (finding that plaintiff did not meet her burden to show she was similarly situated

---

[3]The Defendants were the party to mention this employee in their motion, and they claim that there is no evidence that Ms. Jaramillo ever had EEOC complaints made against her. In her response, Plaintiff made no mention of Ms. Jaramillo and did not argue that Ms. Jaramillo was a similarly situated employee, so it is unclear whether Plaintiff considers Ms. Jaramillo to be a similarly situated employee. In any event, Plaintiff has been unable to point to any admissible evidence that EEOC harassment or intimidation claims had, in fact, been made against Ms. Jaramillo. Plaintiff's information appears to be based on rumor.

to her male counterpart because her male counterpart had not received complaints from his subordinates alleging that he hoarded files and had poor interpersonal skills).

The first three allegedly similar employees are not in any way similar to Plaintiff: Plaintiff has not had an audit conducted of her department; Plaintiff has not physically threatened employees at work; and Plaintiff has not brought a weapon into the workplace. The only remotely similarly situated employee that Plaintiff points to is Ms. Jaramillo, but Plaintiff has not shown that Ms. Jaramillo was employed in a similar position, that Ms. Jaramillo received similar complaints levied against her by her subordinates, and, most importantly, that Ms. Jaramillo complained that a subordinate sexually harassed or threatened her. Although this Court must, at this stage in the proceedings, view the evidence in the light most favorable to Plaintiff, it will not engage in the kind of speculation required to overcome the significant factual gaps in the record. Plaintiff simply has not presented this Court with sufficient admissible evidence to show that similarly situated employees were treated differently in order to establish a prima facie case of race discrimination.

2.    Legitimate Nondiscriminatory Reason

Furthermore, even assuming that Plaintiff did establish a prima facie case of race discrimination, Defendants have presented a legitimate nondiscriminatory reason for their actions. It is undisputed that, after Plaintiff complained about Mr. Eastwood's alleged sexual harassment, the Defendants commissioned an investigation to look into the complaints. During the investigation, a number of City employees who were interviewed stated that Plaintiff was repeatedly loud, rude, and abusive to her subordinates. Some of the employees interviewed by the investigators stated that Plaintiff had been abusive towards Mr. Eastwood, had threatened

12

him, yelled at him, and used obscenities in his presence.  Based on the results of this investigation, Defendants contend that Defendant Essary properly determined that Plaintiff was the problem, so Defendants removed Plaintiff's two subordinates from under her direction and moved Plaintiff across the hall, away from her two subordinates.  Unprofessional, inappropriate, and abusive behavior by a supervisor to her subordinates is a legitimate nondiscriminatory reason for moving the supervisor away from her subordinates and removing the subordinates from under the supervisor's direction.

      3.     Pretext

Plaintiff may show pretext either directly by showing the court that a discriminatory reason more likely motivated the employer or indirectly by demonstrating that the employer's proffered explanation is unworthy of credence.  Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981); McCowan v. All Star Maintenance, Inc., 273 F.3d 917, 922 (10th Cir. 2001).  Mere conjecture that the employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment.  Bullington v. United Airlines, Inc., 186 F.3d 1301, 1317 (10th Cir. 1999).

Plaintiff does not dispute that the investigation was conducted and that certain witnesses who were interviewed stated that Plaintiff was abusive to her subordinates and that she yelled at them.  Moreover, Plaintiff does not refute that she has yelled at her subordinates and used obscenities in their presence.  In fact, Plaintiff herself stated that she used obscenities at Mr. Eastwood on at least one occasion.  See Defs.' Memo. in Supp. of Mot. for Summary Judgment, Ex. C at 11.  Plaintiff's only response to the results of the investigation is that Plaintiff did not believe the investigation was conducted in an objective manner and that Mr. Ewing had never

13

personally witnessed any abusive behavior by Plaintiff. However, mere conjecture as to the objectivity of the investigation is not evidence of pretext, and Plaintiff has pointed to no evidence to cast doubt upon the objectivity of the investigation. Furthermore, Mr. Ewing's statement that he had never witnessed Plaintiff abuse her subordinates does not refute the contrary observations by other witnesses, as even Mr. Ewing stated that he could not deny that the abusive behavior occurred, he could only say that it did not happen when he was present. See Exhibits to Plaintiff's Memo. Brief in Opposition to Mot. for Summary Judgment, Ex. 1 at 118-19.

Plaintiff has not shown sufficient evidence of race discrimination and has not demonstrated that similarly situated non-black employees were treated differently; therefore, Plaintiff has not made a prima facie case of race discrimination. Moreover, Plaintiff has not shown sufficient evidence that Defendants' legitimate nondiscriminatory reasons for their actions were pretextual and unworthy of belief. Defendants are thus entitled to summary judgment on Plaintiff's Title VII race discrimination claim.

      C.    **Title VII retaliation**

To survive summary judgment, the Plaintiff must establish a prima facie case of retaliation by showing: (1) she engaged in protected conduct; (2) she was subject to adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action. O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1252 (10th Cir. 2001). Once Plaintiff makes a prima facie showing, the Defendants must articulate a legitimate nondiscriminatory reason for the adverse employment action. Id. Plaintiff must then respond by showing that the Defendants reasons for their actions are pretextual. Id.

       1.     Prima Face Case

Plaintiff has met the first element -- that she engaged in protected conduct -- required to establish a prima facie case of retaliation. Informal complaints to superiors constitute protected activity. Id. at 1255. Thus, Plaintiff's protected activity began when she complained to her superiors, Mr. Ewing and Defendant Essary, about the breast staring incident. Plaintiff's subsequent EEOC complaints and the filing of this suit also constitute protected activity.

In regard to the second element required to establish a retaliation claim, Plaintiff asserts that the following actions by the Defendants constitute adverse employment actions: (1) demanding that Plaintiff provide medical records relating to reported health problems, (2) contracting for surveillance of Plaintiff in regard to Plaintiff's claim for an accidental work injury, (3) changing Plaintiff's work hours from 7:00 a.m. to 4:00 p.m. to 8:00 a.m. to 5:00 p.m., (4) not allowing Plaintiff to receive counseling services from Ms. Brewer-Marsden, (5) relieving Plaintiff of the duty of distributing payroll checks, (6) moving Plaintiff to a smaller office across the hall, and (7) relieving Plaintiff of her supervisory responsibilities over Mr. Eastwood and Ms. Swingle.

Although the Tenth Circuit liberally defines an "adverse employment action," a case-by-case approach is used to examine the relevant factors, and "a mere inconvenience or an alteration of job responsibilities" does not constitute an adverse employment action. Sanchez v. Denver Public Schools, 164 F.3d 527, 532 (10th Cir. 1998). "Retaliatory conduct other than discharge or refusal to rehire is . . . proscribed by Title VII only if it alters the employee's 'compensation, terms, conditions, or privileges of employment,' or 'adversely affect[s] his [or her] status as an employee.' " Id. at 533 (citations omitted).

The removal of Plaintiff's supervisory functions alters the terms and conditions of Plaintiff's employment and adversely affects Plaintiff's status as an employee. See Dahm v. Flynn, 60 F.3d 253, 258-59 (7th Cir. 1994) (stating that terminating a supervisor's authority over other employees constitutes adverse employment action); Burke v. Gould, 286 F.3d 513, 522 (D.C. Cir. 2002) ([W]e have no doubt that the removal of Burke's supervisory responsibilities constituted an adverse employment action . . . ."). Thus, Plaintiff's allegation that she was retaliated against by relieving her of her supervisory duties constitutes an adverse employment action. However, none of the other alleged adverse actions asserted by Plaintiff constitute "adverse employment action," because none of them significantly affected her employment status beyond being mere inconveniences. See Heno v. Sprint/United Management Co., 208 F.3d 847, 857-58 (10th Cir. 2000) (holding that moving the plaintiff's desk, monitoring her calls, being "chilly" toward her, and suggesting she might do better in a different department does not rise to the level of an adverse employment action); Williams v. Bristol-Meyers Squibb Co., 85 F.3d 270, 274 (7th Cir. 1996) (finding that plaintiff's transfer to a coaching program that had an indirect and minor effect on commission did not constitute an adverse employment action).

Turning to the third element required to establish a prima facie case of retaliation, Defendants argue that Plaintiff fails to demonstrate a causal connection between the protected activity and the adverse employment action because Defendants' alleged adverse employment action occurred more than three months after Plaintiff first complained about Mr. Eastwood. The reason for the delayed employment action, however, is attributable to the investigation that Defendants conducted. If the Court were to follow this rigid three-month rule, as proposed by Defendants, employers could avoid liability for Title VII retaliation by simply waiting three

months before instituting any adverse employment action. This Court declines to adopt such a rule. Because all doubts must be resolved in favor of Plaintiff at this stage in the proceedings, the three- to four-month lapse of time between Plaintiff's protected activity and Defendants' adverse employment action is not so long that it conclusively excludes a causal connection. Therefore, Plaintiff has met her burden of making a prima facie case of retaliation.

  2. Legitimate Nondiscriminatory Reason

As discussed in the above Title VII race discrimination section, Defendants have put forth a legitimate nondiscriminatory reason for their adverse employment action. The results of the Robert Caswell Investigation showed that Plaintiff was often abusive towards Mr. Eastwood, threatening him, yelling at him, and using obscenities in his presence. Unprofessional, inappropriate, and abusive behavior by a supervisor to her subordinates is a legitimate nondiscriminatory reason for moving the supervisor away from her subordinates and removing the subordinates from under the supervisor's direction. Moreover, Defendants offered a legitimate reason for moving Plaintiff rather than moving both her subordinates: moving one person, the person allegedly causing the problem, was easier and more fair than moving two people who were not causing the problem.

  3. Pretext

Because Defendants demonstrated a legitimate nondiscriminatory reason for their adverse employment action, in order to survive summary judgment, Plaintiff must show that Defendants' reasons are pretextual. Plaintiff need not, however, introduce additional independent evidence of discrimination to prove that the proffered reason is pretextual. <u>Reese v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 147-48 (2000); <u>McCowan v. All Star Maintenance, Inc.</u>, 273 F.3d

17

917, 922 (10th Cir. 2001).  Rather, proof that the defendant's explanation is unworthy of credence is probative of intentional discrimination and may be sufficient to show pretext.  Id.

As evidence of pretext, Plaintiff first alleges that Defendant Essary ordered Plaintiff to relocate to the small office across the hall, which was formerly a storage closet, instead of moving Plaintiff to a vacant, larger office in the Loss Prevention Section of Risk Management, which Plaintiff and Mr. Ewing had suggested.  Plaintiff also asserts that she has yet to be allowed to return to her former office, despite the fact that Mr. Eastwood and Ms. Swingle are no longer working in the Finance Department and that Plaintiff is now supervising two new subordinates. Plaintiff argues that, if the Defendants' true motive in moving Plaintiff to the smaller office was simply to separate her from Mr. Eastwood and Ms. Swingle, then Defendants should have allowed her to move into the vacant office in the Loss Prevention Section and/or to move back to her previous office once Mr. Eastwood and Ms. Swingle stopped working in the Finance Department.

As further evidence of pretext, Plaintiff alleges that, in response to an accidental work injury claim Plaintiff made, in which Plaintiff sought only medical benefits, Defendant Essary contracted for surveillance of Plaintiff.  Plaintiff asserts that Defendants have never contracted for surveillance of any other employee seeking workers' compensation benefits as a result of an accidental work injury, when the employee sought only medical benefits and did not have any lost time.  Plaintiff contends that Defendants' actions in contracting for her surveillance is evidence that Defendants' legitimate nondiscriminatory reasons are pretextual.

Finally, Plaintiff offers as evidence of pretext Ms. Brewer-Marsden's deposition testimony regarding the denial of counseling services to Plaintiff.  Ms. Brewer-Marsden stated that

Defendant Essary ordered her not to see Plaintiff as a client in the Employee Assistance Program because Plaintiff had filed suit against the City and Ms. Essary. Plaintiff contends that this denial of counseling services based on Plaintiff's filing of suit is evidence that Defendants' proferred legitimate nondiscriminatory reason is pretext for retaliating against Plaintiff for her protected activity.

Because all inferences must be resolved in favor of Plaintiff at this stage in the proceedings, Plaintiff's prima facie case, combined with the above evidence of pretext, although weak, is sufficient to permit the trier of fact to conclude that the Defendants unlawfully retaliated against Plaintiff.

IT IS THEREFORE ORDERED THAT

1. Defendants' motion for summary judgment is GRANTED with respect to Plaintiff's claims that Defendants subjected her to a sexually hostile work environment in violation of Title VII;

2. Defendants' motion for summary judgment is GRANTED with respect to Plaintiff's claim of race discrimination in violation of Title VII; and

3. Defendants' motion for summary judgment is DENIED with respect to Plaintiff's Title VII claim of retaliation.

                                                      _____
                                                      CHIEF UNITED STATES DISTRICT JUDGE